**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEFFREY WESCOTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 09 CV 3221 ) |
| BANK OF AMERICA CORPORATION | ) Judge Rebecca R. Pallmeyer ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jeffrey Wescott, is a former employee of Defendant, Bank of America Corporation, and a participant in a supplemental 401(k) plan offered by the Bank to its highly compensated employees. In his three-count Second Amended Complaint, Plaintiff alleged that Defendant violated the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, by denying his request for a "hardship" withdrawal from the 401(k) plan and by refusing to cancel his election to defer a portion of his salary as a deposit into the plan. Defendant sought summary judgment on those claims on the ground that the plan administrator did not abuse its discretion in denying the withdrawal request and that Plaintiff had no deferral election in place at all. The court granted that motion as unopposed. What remains is Count III of the complaint, in which Plaintiff claims that Defendant violated section 102 of ERISA by failing to provide relevant information concerning limitations on a participant's right to amend his election for receiving distributions of his benefits under the plan. Defendant has moved to dismiss Count III on the ground that the disclosure requirement of section 102 does not apply in this case or, in the alternative, that the materials Defendant provided were sufficient to apprise Plaintiff of his rights. For reasons stated below, Defendant's motion to dismiss is granted and Count III is dismissed without prejudice.

## BACKGROUND

I.   **Factual Background**

For purposes of this motion, the court presumes that the allegations of Plaintiff's Second Amended Complaint are true. Plaintiff Wescott was employed by Bank of America Corporation from January 1998 to April 2007. (Compl. ¶ 7.) Until his resignation in 2007, Plaintiff was a highly compensated employee who participated in the Bank's Supplemental 401(k) Plan, referred to as the "401(k) Restoration Plan," which permitted him to defer a larger portion of his compensation than would be possible under the 401(k) plan available to other Bank employees. (*Id.* at ¶ 8.)[1] When Wescott left the Bank in 2007 to work for Merrill Lynch & Co., he made a formal election to receive the proceeds of his Restoration Plan starting in the year 2018 over a ten year period. (*Id.* at ¶¶ 10, 17.)

In 2008, Merrill Lynch was itself acquired by the Bank and, as a result, Merrill Lynch imposed certain restrictions on Plaintiff's activities, prohibiting him from recruiting clients he had serviced while he worked for the Bank. (*Id.* at ¶ 14-15.) Due to these restrictions and the unforeseen distress in the American economy, Plaintiff alleges, his income has fallen off to the point where he is unable to pay his mortgages, taxes, and other financial obligations. (*Id.* at ¶ 12.) Plaintiff has requested an emergency withdrawal of one hundred sixty-five thousand dollars ($165,000) from the Restoration Plan, but the Bank has limited his withdrawal to twenty-five thousand dollars ($25,000). (*Id.* at ¶¶ 22, 23.) In its summary judgment submissions, the Bank asserted that granting Plaintiff's request for an emergency withdrawal would have jeopardized the Plan's tax status.

In Count III of his complaint, Plaintiff alleges that the materials that the Defendant supplied

---

[1]   ERISA authorizes employers to establish supplemental plans for highly compensated employees who would otherwise be limited in the amounts they are permitted to contribute for retirement investment purposes. Unfunded plans maintained for the purpose of providing deferred compensation for a select group of upper managers are sometimes referred to as "top hat" plans. *See* 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).

regarding the Restoration Plan failed to accurately and specifically describe Plaintiff's rights under the Plan; specifically, Plaintiff alleges, Defendant failed to warn him that once he elected a payment plan, he would not be free to amend it. (*Id.* ¶¶ 18, 19.) In this lawsuit, Plaintiff sought a declaration that he is entitled to cancel his payment selection, an order permitting him to withdraw funds from his Restoration Plan account, and a determination that, because Defendant violated ERISA by failing to comply with its disclosure requirements, Defendant is estopped from denying Plaintiff the right to change his deferral election.

## II.     Defendant's Motion to Dismiss

### A.     ERISA Disclosure Obligations

As noted, Defendant's motion for judgment in its favor on Counts I and II was unopposed. What remains before the court is Count III, in which Plaintiff charges Defendants with violating the disclosure requirements of section 102 of ERISA. 29 U.S.C § 1022. Plaintiff was given what he calls a "purported summary report" regarding the Restoration Plan, relied on the information in that report, and claims that he has suffered damages because the report was deficient in supplying a reasonable description of his rights under the Restoration Plan. (Compl. at ¶¶ 69-71.) In moving to dismiss this claim, Defendant argues that as a non-qualified "top hat" plan, the Restoration Plan is exempt from the disclosure rules imposed by ERISA section 102. Even if section 102 were applicable, Defendant contends, it does not impose a requirement that Defendant provide information regarding emergency withdrawal. In any event, Defendant insists, it did in fact supply Plaintiff with relevant information regarding benefits available to him under the Restoration Plan and limitations on emergency withdrawals and distribution elections.

The issue before the court on this motion is whether Plaintiff has alleged a violation of ERISA as a matter of law. Plaintiff's Second Amended Complaint invoked section 102 of ERISA. That section requires the administrator of a plan governed by ERISA to provide participants with a Summary Plan Description ("SPD") that includes a reasonable description of the rights,

3

obligations, and benefits available to participants. (Compl. ¶ 67-68.) There are, however, exceptions to the SPD requirement. Federal regulations permit alternative methods of compliance with ERISA's disclosure requirements for "top hat" plans. Specifically, 29 C.F.R. § 2520.104-23(b) provides for disclosure by way of statements filed with the Secretary of Labor. Defendant has supplied materials demonstrating that it complied with this alternative disclosure requirement. (Def.'s Mem. Supp. Ex. C.)

Plaintiff admits that he did receive "a purported summary report" from Defendant but contends that its disclosures are inadequate in that the report did not explain how and when a plan participant may withdraw funds in emergency or hardship circumstances. (Compl. ¶¶ 69.) Section 102 itself, however, makes no mention of any disclosure requirements regarding emergency withdrawals. *See* 29 U.S.C. § 1022(b) (laundry list of required disclosures; no mention of emergency withdrawals). Seventh Circuit cases recognize that ERISA does not require disclosures concerning every contingency. *See Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (failure to disclose circumstances in which plan administrator would put a disability benefits application "on hold" did not violate fiduciary obligations); *Herrmann v. Cencom Cable Assoc., Inc.*, 978 F.2d 978, 984 (7th Cir. 1992) (Summary Plan Description need only be a "capsule guide in simple language"; failure to disclose 45-day limit for paying initial premiums for post-employment health insurance did not violate ERISA); *Lorenzen v. Employees Retirement Plan of the Sperry and Hutchinson Co.,* 896 F.2d 228, 236 (7th Cir. 1990) (plan summary need not "anticipate ever possible idiosyncratic contingency that might affect a particular participant's . . . status.")

Moreover, Defendant notes, the plan brochure that Plaintiff received did explain that emergency withdrawals are available in some circumstances. It explained that a withdrawal might be permitted for such "unforeseen emergencies" as "casualty or acts of God, illness or other extraordinary events beyond your control, but . . . not . . . more predictable events . . . ."

4

(Restoration Plan Brochure, Ex. A in support of Def.'s Motion to Dismiss, at p. 12.)[2]  The brochure included a web address and a phone number Plaintiff could call with any additional questions. (*Id.* at unnumbered page 4.)  Thus, Defendant argues, it was not legally required to provide detailed information regarding emergency withdrawals, but did offer some information regarding the options for an emergency withdrawal in the brochure it furnished to Plaintiff.  Plaintiff has not explained how that information (which appears to be dictated by the tax code, *see* 26 U.S.C. § 409A (a)(2)(B)(ii)(I)), was inadequate or inaccurate.

Plaintiff contends he was unaware that his election of distribution of his benefits beginning in 2018 was a one-time election that cannot be changed. (Compl. ¶ 27.)  Language in the plan brochure appears to defeat that contention. Under the heading "Subsequent changes to distribution elections," the brochure explains that two requirements must be met in order for a participant to alter his distribution election: first, the new election must be made more than twelve months before the first scheduled payment, and second, the election must postpone the start of the payment by at least five years. (Plan Brochure at 10.)  In essence, the Plan does permit a participant to change his election, but only in such a way as to further delay distribution–a rule that, again, appears to be consistent with the relevant IRS provisions.  *See* 26 U.S.C. § 409A(a)(4)(C)(ii), (iii).  Although Plaintiff alleges generally that the materials he was provided did not provide an adequate disclosure, the brochure does explain Plaintiff's choices for deferred compensation, and Plaintiff has not explained what is confusing about the explanation or missing from it.

Plaintiff's claim that Defendant has violated ERISA's disclosure requirements will be dismissed.

### B.   State Law Claims

---

[2]   The court is free to consider Restoration Plan documents because such documents are "referred to in the plaintiff's complaint and are central to his claim." *See Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Feigl v. Ecolab, Inc.*, 280 F. Supp.2d 846, 849 n.2 (N.D. Ill. 2003) (reviewing a Summary Plan Description on a Rule 12(b)(6) motion where that document was referred to in the complaint).

Without conceding his statutory claim, Plaintiff urges in his four-page response to the motion to dismiss that even without regard to any ERISA violation, Count III adequately alleges claims for fraud, negligence, and breach of fiduciary duty. (Plaintiff's Response, at 2, 3.) This argument has little traction. State law claims are preempted by ERISA's plain language. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." Case law interpreting this language makes clear that the scope of the preemption is broad and deep: "A law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. Under this broad common-sense meaning, a state law may relate to a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)(internal citations omitted). ERISA's preemption provision bars Plaintiff's negligence claim. His common law breach of fiduciary duty claim is similarly barred, and any fiduciary claim grounded in ERISA itself fails because deferred compensation plans are exempted from the fiduciary duty requirements of ERISA, 29 U.S.C. § 1101(a)(1). Even if the fraud claim were not preempted, the court would find no allegations sufficient to state "with particularity the circumstances constituting fraud . . . .," as required by FED. R. CIV. P. 9(b). Plaintiff's state law claims are dismissed.

## **CONCLUSION**

Defendant's motion to dismiss Count III [28] is granted. Defendant has satisfied the court that ERISA section 102 does not apply in this context, and when viewed in the light of the Plan documents properly considered by the court, Plaintiff's allegations are insufficient to state a claim that Defendant violated any other statutory disclosure obligation. State law claims are preempted. Count III is dismissed without prejudice. Plaintiff will have leave to file a final amended complaint within 21 days.

ENTER:

Dated: May 17, 2010

_____
REBECCA R. PALLMEYER
United States District Judge